# France's Estate.  France's Appeal.
# Nesbit's Appeal.

1. A will provided : I give and bequeath to my beloved wife, Jane, one-third of all my personal property, and one-third part of all the income, rents, and use of my real estate. I do give and bequeath unto my son William France all the residue and remainder of my estate, real or personal. If the said William should not be living at my death, then in that case his children shall inherit my estate the same as their father would if living. I do nominate, &c., my said son William France executor, &c., and do hereby give my said executor full power to sell and convey any and all my real estate, that

[France's Estate.]

I may die seised of, the same as I could do if living. *Held*, that the wife took only a life estate in one-third of the realty.

2. A devise of the rents, issues and profits of land is a devise of the land for so long as the rents, &c., are given.

3. A technical meaning is to be given to a technical word in a will, unless there be clear evidence of a contrary intention.

4. If the construction of a will be doubtful the construction is to be as conformably as possible to the general rules of inheritance.

5. If a widow or family of a decedent pay his necessary funeral expenses without objection on the part of an executor his assent is presumed and the estate is liable for the payment.

February 4th 1874. Before AGNEW, C. J., MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Appeals from the Orphans' Court of *Philadelphia :* No. 50 and 95, to July Term 1873.

These appeals were from the decree of the Orphans' Court, distributing the estate of Abraham France, deceased.

The decedent died in November 1864, having made a will, dated October 27th 1863, and leaving a widow, Jane France, and an only child, William France, who was the child of a former wife.

The provisions of the will, which gave rise to the questions in these appeals, are as follows :—

" Item. I give and bequeath to my beloved wife Jane, one-third of all my personal property, and one-third of all the income, rents and use of my real estate.

" Item. I do give and bequeath unto my son William France, all the residue and remainder of my estate, real or personal; if the said William should not be living at my death, then, in that case, his children shall inherit my estate the same as their father would, if living.

" Lastly. I do nominate and appoint my said son William France, sole executor of this my last will and testament, and do hereby give my said executor full power to sell and convey any and all real estate that I may die seised, the same as I could do if living; and do hereby revoke and make void all former wills and testaments heretofore by me made, and do declare this only to contain my last will and testament."

The executor never filed an inventory of the decedent's personal estate, nor caused an appraisement of it to be made. Nor did the widow ever make a claim or ask for an appraisement for the $300 under the Act of Assembly, allowing her to retain that sum. The widow married James Nesbit, and died in February 1871, intestate and without issue, leaving to survive her, her husband, to whom administration of her estate was granted. The executor of Abraham France sold the decedent's real estate under the power conferred on him by the will.

He filed an account, which after being corrected by the auditor showed in his hands as follows :—

[France's Estate.]

| | | |
|---|---|---|
| Personal estate, after deducting expenses, &c. | $235.91 | |
| Interest, . . . . . . . | 106.72 | |
| | | $342.63 |
| Real Estate, . . . . | $2,232.89 | |
| Interest . . . . . | 122.71 | |
| | | $2,355.60 |

Before the auditor, Nesbit as administrator of the widow of deceased claimed to be paid :

| | | | | |
|---|---|---|---|---|
| Cash paid by her for medical attendance to the decedent, | | | | $12.00 |
| " " " grave clothes, . . . . | | | | 14.00 |
| " " " undertaker, . . . . | | | | 130.18 |
| " " " for tomb, . . . . | | | | 142.00 |
| | | | | $298.18 |

In relation to these claims there was evidence that the widow said that she did not intend that any one else should pay them, that she did it voluntarily out of respect for her husband, and she never made any claim upon the executor for repayment.

He also claimed to be paid $300, the amount which she was authorized to retain out of the decedent's estate.

He likewise claimed one-third of the personal estate of the decedent and one-third of the proceeds of the real estate of the decedent, as tenant by the curtesy, on the ground that the devise of Abraham France to his widow was a fee.

The auditor, J. P. O'Niell, Esq., refused to allow the claims for payments made by the widow, and the interest on one-third the proceeds of the real estate. He awarded to the administrator $114.21, one-third of the personal estate and interest.

On exceptions filed by Nesbit to the report of the auditor, the Orphans' Court, Allison, P. J., decreed :—

" And now, to wit, June 29th 1872, the court order, direct and decree as follows, to wit : on the exceptions filed by James Nesbit— that the proceeds of the sale of the real estate and interest thereon be distributed as follows, to wit :—

| | |
|---|---|
| To William France, two-thirds of $2232.89, . | $1488.59 |
| " " " " " $122.71, interest, | 81.81 |
| To James Nesbit, one-third of $122.71, interest, | 40.90 |

" And the remaining sum of $744.30 is directed to be invested in security to be approved by the court, the interest thereon as it accrues, to be paid to the said James Nesbit, for and during the term of his natural life, and after the decease of the said James Nesbit, the principal thereof to be paid to the heirs of the said Jane Nesbit, deceased ; the exceptions filed by the said James Nesbit, as administrator of the estate of the said Jane Nesbit, deceased, are overruled, and the auditor's report, except so far as altered and modified by this decree, is confirmed."

[France's Estate.]

Both William France, the executor, and James Nesbit appealed to the Supreme Court.

France assigned for error the awarding of $40.99 to Nesbit, and directing the sum of $744.30 to be invested for his use during his life.

Nesbit assigned for error that the Orphans' Court refused to award to him the several sums paid by the widow of the decedent for medical attendance, funeral expenses and tomb, and the $300 which she was authorized to receive from the decedent's estate under the Act of April 14th 1851, and its supplements.

*E. R. Worrell* (with whom was *J. Shallcross*), for France.— The devise of the income of land is a devise of the land for so long as the income is devised : Butterfield *v.* Hoskins, 33 Maine 392 ; Miller *v.* Casselberry, 11 Wright 378 ; Williams on Real Property 205 ; 2 Redfield on Wills 344, sect. 49. The devise is not within the Wills Act of April 8th 1833, because it is not a direct devise of land : O'Harra on Wills 89. One who of his own motion buries a deceased person cannot recover from the personal representative : 3 Redfield on Wills 246, 247, sect. 11, 14 ; Gregory *v.* Hooker, 3 Hawk. 394. The husband of a deceased widow is not entitled to the $300 : Scott on Intestate Laws 166 ; Nevin's Appeal, 11 Wright 232. The widow waived her right : Davis's Appeal, 10 Casey 256 ; Baskin's Appeal, 2 Wright 65.

*J. W. Hunsicker*, for Nesbit.—The claims for the payments by the widow were not barred by the Statute of Limitations : McClintock's Appeal, 5 Casey 360 ; McCandless's Estate, 11 P. F. Smith 9. An executor having assets is liable to pay suitable funeral expenses incurred by a third person : Rogers *v.* Price, 3 You. & Jer. 28 ; Jenkins *v.* Tucker, 1 H. Black. 90 ; Tagwell *v.* Heyman, 3 Campbell 298. A widow marrying again is entitled to the $300 : 1 P. F. Smith 441 ; Terry's Appeal, 5 Id. 345. Courts incline to a construction which will pass an estate of inheritance : 2 Redfield on Wills, sect. 2 (711), 17 ; Stewart *v.* Garnett, 3 Sim. 398 ; 2 Jarman on Wills 534, note *f;* Andreas *v.* Boyd, 5 Greenl. 199 ; Foy *v.* Foy, 1 Cush. 93 ; Earl *v.* Rowe, 35 Maine 414 ; Carlyle *v.* Cannon, 3 Rawle 489 ; Wills Act April 8th 1833.

The opinion of the court was delivered, May 11th 1874, by

MERCUR, J.—These two appeals were argued together. They are both from the same decree. The important question is, what interest did Jane France take, under the will of her husband, in his real estate ? Its language is this : " Item, I give and bequeath to my beloved wife Jane, one-third of all my personal property, and one-third part of all the income, rents, and use of my real estate."

" Item. I do give and bequeath unto my son, William France, all the residue and remainder of my estate, real and personal."

Nesbit, a second husband of Jane, and who survives her, claims

25 P. F. SMITH—15

she took an estate in fee, in one-third of the real estate. It is well settled as a general rule of law, that a devise of the rents, issues and profits of land, is equivalent to a devise of the land itself. It cannot, therefore, be denied, even if the actual intent of the testator was otherwise, that in law, she took the land itself, for such a length of time, as he thereby gave her " the income, rents and use " of the property.

This brings us to the consideration of another question, to wit : did the whole estate of the testator pass to her, or only a life estate ? The devise contains no words of inheritance. It has, however, often been held substantially, and is expressly declared by the 9th section of the Act of 8th April 1833, Purd. Dig. 1475, pl. 10, that " all devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over, or by words of limitation, or otherwise, in the will, that the testator intended to devise a less estate."

Does it then appear in this will " by a devise over or otherwise," that the testator intended to devise a less estate to Jane ? The intention is to be gathered from the whole will. If any of the clauses therein are repugnant to each other, effect must be given to the last. Looking first at the particular clause in question, we discover that the language does not in express words give to her one-third of all his real and personal property, but " one-third of all his personal property, and one-third part of all the income, rents, and use " of his real estate. While, as we have shown, this language is sufficient in law to pass the land itself for such a length of time as she was given " the income, rents and use " thereof ; yet we are not thereby precluded from considering that language in seeking to ascertain the duration of the estate given.

It cannot be denied that the intent to dispose of land is not usually manifested by disposing of " the income, rents and use " only, thereof. We also see that the devise to her was of an undivided interest in both the real and personal estate. It therefore left to be disposed of the residue of each kind of property, and, if she took a · life interest only in the land, a " remainder " therein. Passing then to a consideration of the devise to his son William, we discover, to him was given " all the residue and remainder " of testator's estate, real and personal. If the estate to his wife had been expressly limited to her life, no more apt or expressive language could have been used by the testator in devising it over to his son. By " residue " he gave to his son all of his property in which he gave his wife no right, and by " remainder " he gave him any interest in land which remained after the termination of the estate given to his wife. The word " remainder " is the correct legal language to pass the land after the expiration of a life estate therein. If it be urged that this is giving a too technical meaning

[France's Estate.]

to the words, I answer, when it is applied to an estate in land, the law has given that technical meaning to it. It is a settled rule of construction that a technical meaning shall be given to a technical word in a will, unless there is clear evidence of a contrary intention. I may add, that it is by construction only of law, that the words used could give the widow the land itself in fee. Giving the construction asked for her, prevents due effect being given to the later clause, devising the land to the son. By holding then that the wife took a life estate only, as we do, it gives effect to the latter clause, and does no violence to any part of the will. It gives effect to every word and harmonizes the whole instrument. Besides, if the construction were doubtful, the law leans in favor of a distribution as conformably to the general rules of inheritance as possible: Amelia Smith's Appeal, 11 Harris 9. The view we have taken effectuates that result. We therefore think the learned judge erred in decreeing that any portion of the proceeds of the real estate, or of the interest therein, should be paid to James Nesbitt, and the several errors assigned by France are sustained.

The first error assigned by Nesbit relates to the disallowance of the claim presented by him as administrator of his wife Jane, formerly Jane France. The claim is for money paid by the widow of Abraham France for four items. The first for medical attendance on her husband, and the last for a tombstone, were properly disallowed. We see no reason why the widow should volunteer to pay those claims, and demand to be repaid by the executor. With equal propriety she might pay any debt owed by her late husband, or contracted by the executor in the settlement of the estate, and collect the amount from the executor. It would be an interference with the powers and duties of the executor that the law will not tolerate. She, in that respect, would have no more right than a stranger to create herself a creditor of the estate.

The second and third items, we think, rest upon different grounds. They both relate to expenses attending the husband's funeral. It is true, the executor, by virtue of his trust, was charged with the burial of the testator, yet wills are generally, and I think, very properly, not read, nor the contents communicated to the executor, until the funeral obsequies are ended. The necessary rites of humanity require prompt action. The widow and family of the deceased occupy a position most convenient to discharge those duties. When they do properly discharge them, and incur and pay the necessary expenses, without objection on the part of the executor, his assent must be presumed, and the estate be held liable for the amount paid. Nor does the fact that the widow said to a stranger, she did not intend any one else to pay the expenses, and that she did it voluntarily out of respect to her husband, constitute any bar to her right to recover them. Moreover, the auditor has found that the executor of Abraham

[France's Estate.]

France "never filed an inventory of the goods, chattels, and credits of the decedent, nor did he ever cause an appraisement of the personal estate to be made." Hence, the omission by the executor to discharge his duties, made the action of the widow the more necessary. There is no evidence that the amount paid by the widow was unreasonable or unnecessary. The sum, therefore, paid for grave clothes, and to the undertaker, amounting to $134.18, should have been allowed.

We see no error in disallowing the claim for three hundred dollars. This sum is given to a widow, if she claims it at a proper time. The law does not force it upon her. It is a right that she may waive. In this case she never claimed it. She lived more than six years after the death of her husband. The right then died with her, and her executor cannot now demand it. The second assignment is not sustained.

> Decree reversed. And now, May 11th 1874, it is ordered and decreed that the fund be distributed as follows, to wit: to James Nesbit, administrator of Jane Nesbit, out of the personal estate, $203.66; to William France, the residue of the personal estate, and the whole proceeds of the real estate, $2594.58; and that the costs of each appeal be paid by the appellee therein.