## Byrne's Estate.

Argued May 27, 1935; reargued October 1, 1935. Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Harvey A. Gross,* for appellant.

*Allen C. Wiest,* with him *Wm. A. Allen,* for appellees.

OPINION BY MR. JUSTICE DREW, November 25, 1935:

Margaret M. Mandeville died without issue on November 20, 1930. Her last will and testament contained these provisions:

"Sixth: All the rest, residue and remainder of my estate, whether real, personal or mixed, wheresoever situate, I give, devise and bequeath unto my beloved sister, R. Philomena Byrne, absolutely.

"Seventh: Upon the death of my said sister, R. Philomena Byrne, should any part of my estate remain, I give, devise and bequeath the same to my beloved niece, Mrs. J. M. Shadle."

R. Philomena Byrne died without issue on January 26, 1933, having in her possession at the time securities of the face value of $16,000, which were clearly earmarked as having come from the estate of Margaret Mandeville. By the twelfth paragraph of her will, Mrs. Byrne ordered her executor, The York National Bank & Trust Company, to divide the residue of her estate equally between certain charities. A petition was filed by Mrs. Shadle, as administratrix d. b. n. c. t. a. of the

estate of Margaret Mandeville, praying that The York National Bank & Trust Company be directed to deliver to her the earmarked securities. Preliminary objections raised in the answer filed by the charities were sustained by the court below, and a decree was entered dismissing the petition. From the overruling of exceptions to that decree the present appeal was taken.

The sole question raised is whether Mrs. Byrne acquired absolute ownership of the residue of her sister's estate or simply a life interest with power of consumption. The court below held that her interest was one of absolute ownership and that the securities therefore passed under the residuary clause of her will. It was of the opinion that the seventh paragraph of Mrs. Mandeville's will did not indicate a clear intent to restrict the estate previously given, but at most disclosed "merely a secondary or subordinate intent to strip the estate given by the sixth paragraph of one of its inherent attributes, to wit: the right absolutely to dispose of it." We cannot agree with that conclusion.

The cases of this character in our reports fall into two groups. On the one hand, we have repeatedly observed that "an estate devised in fee cannot by subsequent limitations be stripped of its legal incidents" (Fairman's Est., 287 Pa. 334, 336), and we have accordingly held that "Where words sufficient to vest an absolute interest are used in a will, such interest is not to be cut down by subsequent provisions unless the testator has indicated a clear intent to take away the estate previously given": Cross v. Miller, 290 Pa. 213, 216.[1] The matter was aptly

---

[1] Thus, a provision is ineffective which imposes a restraint upon the alienation of a fee during the donee's life (Reifsnyder v. Hunter, 19 Pa. 41; Walker v. Vincent, 19 Pa. 369; Jauretche v. Proctor, 48 Pa. 466; but cf. M'Williams v. Nisly, 2 S. & R. 507, 513) or for a period of years (Pattin v. Scott, 270 Pa. 49), or which directs a specified testamentary disposition by the donee (Good v. Fichthorn, 144 Pa. 287; Smith v. Bloomington Coal Co., 282 Pa. 248), or attempts to control the manner of descent: Cross v. Miller, 290

put by Mr. Justice KEPHART in Buechley's Est., 283 Pa. 107, at page 109: "Where there is a gift of an entire estate by clear and explicit language, the presumption is that the gift is absolute, and subsequent clauses to reduce it must do so by language which is equally clear and explicit, having the undoubted effect of causing such diminution." On the other hand, "we have probably as often held that, in finding the controlling intention, all the words used by testator should be taken into account, and, if the intent to restrict the gift is clear, it must be given effect": Wettengel's Est., 278 Pa. 571, 573. As we said in Stanton v. Guest, 285 Pa. 460, at page 463, quoting from Good v. Fichthorn, 144 Pa. 287, 292, "The true test of the effect of language apparently at variance with other parts of the devise, is whether the intent is to give a smaller estate than the meaning of the words of the gift standing alone would import, or to impose restraints upon the estate given. The former is always lawful and effective, the latter rarely, if ever." So, where the language of the whole will clearly indicates that a gift to A was in fact intended to be a life estate with power of consumption, and remainder over, it will be held to be such, even though the words of gift to A, standing alone, would import absolute ownership.[2]

---

Pa. 213. Similarly, where testator's language reveals a controlling intention to give to the first taker an estate of absolute ownership, a gift over of what remains at the death of the first taker has been held to be void: Levy's Est., 153 Pa. 174; Evans v. Smith, 166 Pa. 625; Billmyer v. Billmyer, 296 Pa. 31; see Gilchrist v. Empfield, 194 Pa. 397; Huber v. Hamilton, 211 Pa. 289. See also Eichenlaub's Est., 307 Pa. 357, 364; Lerch's Est., 309 Pa. 23, 27; Crawford v. Withrow, 314 Pa. 497, 501. Merely precatory words are, of course, likewise ineffective to cut down a previously given absolute estate: Boyle v. Boyle, 152 Pa. 108; Robinson's Est., 282 Pa. 531; Kidd's Est., 293 Pa. 21; see Pennock's Est., 20 Pa. 268; Good v. Fichthorn, supra.

[2] Schmid's Est., 182 Pa. 267; Trout v. Rominger, 198 Pa. 91; Dickinson's Est., 209 Pa. 59; Allen v. Hirlinger, 219 Pa. 56; Keown's Est., 238 Pa. 343; Fassitt v. Seip, 240 Pa. 406; Stanton

The repugnancy which causes a gift over of an unconsumed portion to fail in the first group of cases lies in the restriction imposed by the gift over upon the alienation of a previously given estate of absolute ownership. While some restraints on alienation (e. g., restraints which simply forbid alienation to a particular person or class of persons) have been held valid (see M'Williams v. Nisly, 2 S. & R. 507, 513; Jauretche v. Proctor, 48 Pa. 466, 472; Gray, Restraints on Alienation (2d ed.), sections 31 ff.), restraints upon the power of the owner of an absolute estate to determine its devolution by will or by intestacy have been generally struck down. Thus the forfeiture, by gift over, of an absolute estate upon failure to dispose of the property during life (see Rea v. Bell, 147 Pa. 118; Gray, supra, section 56) or by will is invalid.[3] But before this doctrine may be invoked, it

v. Guest, 285 Pa. 460; Fairman's Est., 287 Pa. 334; Chesnut v. Chesnut, 300 Pa. 146; Brockley's App., 2 Sadler 569; Fidelity Title & Trust Co. v. Nibozin, 88 Pa. Superior Ct. 113. See also Edwards v. Newland, 271 Pa. 1; Wettengel's Est., 278 Pa. 571.

[3] See Karker's App., 60 Pa. 141; Gillmer v. Daix, 141 Pa. 505; Fisher v. Wister, 154 Pa. 65; Jarman on Wills (7th ed.), pages 537-538; Gray, Restraints on Alienation (2d ed.), sections 57 ff. The doctrine that a gift over of what remains at the death of the first taker is void has sometimes been placed upon the ground of uncertainty as to the subject-matter of the gift, where the gift was of money or of a residue: see Jarman, supra, pages 437-438; Gray, supra, section 58. That ground seems not to have been considered in the later cases, however. The objection of uncertainty obviously could have no force where the unconsumed portion consists of clearly earmarked securities, as in the present case. See Dickinson's Est., 209 Pa. 59.

It is worth noting that this whole doctrine is forcefully castigated by Gray, supra, in sections 74b-d: "The establishment of this doctrine is an interesting instance of what naturalists call a reversion to a primitive type. In the barbarous stages of law, courts thwart the intention of parties to transactions by rules and restrictions which are not based on considerations of public advantage, but are formal, arbitrary, and often of a quasi sacred character. The process of civilization consists in the courts endeavoring more

must appear clearly, from a reading of the whole will; that testator's intention was to vest in the first taker an estate of absolute ownership. The use of words of restriction after language which in itself would be sufficient to create an absolute estate may of course be evidence—to be considered with other provisions in the will —of an intent to create a less estate.[4] Accordingly, a gift over after the death of the first taker may indicate an intention to vest in the first taker no more than a life estate[5]; and where an examination of the whole will discloses such to be the controlling intention it will of course be given effect.

The sixth paragraph of Mrs. Mandeville's will provided for the gift of the residue of her estate to her sister "absolutely." This clause by itself would undoubtedly be sufficient to vest the entire ownership. In the paragraph immediately following, however, testatrix gives, devises and bequeaths to her niece whatever should remain of her estate upon her sister's death. It cannot

---

and more to carry out the intentions of the parties or restraining them only by rules which have their reason for existence in considerations of public policy. . . . It is to be observed that the rule is not a rule of construction, it is not a rule to carry out the intention of the parties, but its avowed purpose is to defeat that intention. The courts always recognize this fact; and that no considerations of public policy are involved, is shown by its being perfectly easy to carry out the desired result by a slight change of phrase. If you give a man a fee simple, you cannot provide that if he does not sell or devise it it shall go to T, but if you give him a life estate with power to appoint by deed or will, and in default of appointment to T, the gift to T is perfectly good. In both cases the intention is clear and undisputed; when you defeat the intention in one case, you are defeating exactly the intention that is preserved in the other."

[4] Zeisweiss v. James, 63 Pa. 465; Urich v. Merkel, 81 Pa. 332; Fox's App., 99 Pa. 382; Field's Est., 266 Pa. 474; Reiff v. Pepo, 290 Pa. 508.

[5] Zimmerman v. Anders, 6 W. & S. 218; Sheets' Est., 52 Pa. 257; Taylor v. Bell, 158 Pa. 651; Boulevard from Second Street, 230 Pa. 491; Keown's Est., 238 Pa. 343.

be doubted that the phrase "should any part of my estate remain" refers to the unconsumed portion of the residue given her sister in the preceding paragraph. The language of the seventh paragraph clearly and unequivocally provides for a gift over of whatever portion of the residue might remain unconsumed at Mrs. Byrne's death. It therefore plainly indicates an intention to limit the estate given her in the sixth paragraph.

It is urged by appellees that this construction wholly disregards the word "absolutely" and hence runs counter to the rule favoring a construction which will render every word operative rather than one which makes some words idle and nugatory. But appellees' construction would render inoperative not one word but a whole paragraph. Nor can it be said that the word "absolutely" is being disregarded. The plain import of this word in the sixth paragraph is that, being about to provide for a gift over upon her sister's death, testatrix wanted to make it quite clear that her sister was to have an absolute and unrestricted power of enjoyment and disposition while she lived. There can be no doubt that Mrs. Byrne was entitled to use and consume or dispose of her sister's residuary property during her life for any purpose and in any way that she might see fit, and without interference or challenge from anyone. But it is equally clear that any of the property not thus expended was to go over to testatrix's niece. The fact that testatrix had lived with her sister for twenty-four years and apparently entertained considerable affection for her lends no strength to the argument in favor of appellees' construction. In vesting in Mrs. Byrne a life estate with power to consume, testatrix gave her the complete use and enjoyment of the property, and in fact all the benefits of absolute ownership except the power to control the devolution of the unconsumed portion upon her death. That testatrix should want to retain this power in order to benefit her "beloved niece," who is thus described in no less affectionate terms than her sister, is natural.

The court below relied principally upon Cross v. Miller, supra, and Billmyer v. Billmyer, 296 Pa. 31, in reaching its decision. In the Cross case the disputed provision of the will was: "Should Martha C. Greenawalt die unmarried or childless, then her sister Marg't. Cross is to become her heir and should Marg't. Cross die before her husband then her children are to become her heirs and their father William U. Cross their guardian. Should Eleanor D. Huston die before her husband her children are to become her heirs and their father Jas. A. Huston their guardian." In holding this language ineffective to cut down previously given absolute estates, we said: "The codicil shows merely a desire to leave the dispositions of the will as written but to control the descent from three of the four devisees of all property left to them. . . . In other words, testatrix, without any idea of disturbing the gifts as made in the will, sought to direct or control the inheritance or descent of the title she was giving in fee; this the law does not permit." Plainly, an attempt, such as was there made, to control the manner of descent of an absolute estate, being in derogation of the intestate and other inheritance laws, must fail. In the Billmyer case, testator, having bestowed an absolute estate upon his wife, provided: "Second—And after the death of my wife Hannah my estate shall be equally divided in four equal shares, namely to the following children, Lewis, John, Mary and Joseph Billmyer, provided anything is left at the death of my wife, but she shall have full power and authority and power to sell and dispose of the whole of my estate." In concluding that testator's controlling intention was to give an absolute estate to his wife, and that no clear intent to reduce it to a less estate appeared, we said: "In our opinion, this second paragraph of decedent's will either states a subordinate intent to control a previously given absolute estate,—which was beyond his legal power,—or it shows a mere intent to state how the property shall descend in case his wife should die

without a will, at the same time recognizing her full power and authority to sell the property in her lifetime or dispose of it at her death, as she might see fit." We therefore held that the property in question passed under the wife's will. The fundamental objective, of course, in the construction of wills is to give full effect to the testator's intention, in so far as that intention may be ascertained. Accordingly, where it appears that the controlling intention is to give an absolute estate, language inconsistent therewith must be held ineffective. Such certainly was the Cross case, and such this court held the Billmyer case to be. Where, however, a reading of the whole will shows a controlling intention to give a less estate, with a gift over, that intention must be given effect. Such is this case.

In Stanton v. Guest, supra, the will provided as follows: "I give, devise and bequeath unto my husband Edward H. Addleton all my estate, real, personal or mixed, . . . to have and to hold to him, his heirs, executors, administrators and assigns." Having thus used words which would clearly import absolute ownership, testatrix in the next paragraph stipulated: "It is my will, that upon the death of my said husband, I give, devise and bequeath unto my nephew and niece Edgar M. Guest and Elsie W. Guest . . . all of the estate real, personal or mixed . . . that my said husband shall be seized or possessed of at the time of his death, and that he has not disposed of." We held that the will vested but a life estate in testatrix's husband, with a remainder over of the unconsumed portion. Similarly, in Fairman's Est., supra, the language of the will was: "First. I give and bequeath to my husband, W. M. Fairman, all my property, personal, real and mixed, to him and his assigns, forever. 2nd. At his death if any is left I direct it to go to my sister, Mary A. Jefferson, if living at the death of W. M. Fairman." We held that Mary A. Jefferson took under this will, testatrix's husband having been given a life estate with power of consumption. In

both of these cases the words of gift to the first taker were certainly no less appropriate to a gift of absolute ownership than in the present case. This language was none the less obliged to yield in each case to the controlling intention plainly indicated in the subsequent clause. We are satisfied that a like situation is presented in the case before us, and that the court below erred in holding the gift over to Mrs. Shadle void.

The difficulties which pervade this whole subject, vexing as it is and always has been to courts and lawyers, recall a remark of Sir Edward Coke's: "Wills and the construction of them do more perplex a man than any other learning, and to make a certain construction of them, this excedit jurisprudentium artem." The effort always is to determine the intention of the testator, and, unless public policy forbids it, to enforce that intention, so that in death his property may be faithfully disposed of according to his will. Courts have this duty in the last analysis, and cases, even in the same jurisdiction, which seem to be, on the one hand, completely parallel, or, on the other hand, in irreconcilable conflict, are really not so because in each instance the result reached is founded upon the court's decision, in view of all the circumstances, as to what the testator intended. As was said by Chief Justice MARSHALL in Smith v. Bell,[6] 31 U. S. 68, at page 80, quoting from 3 Wils. 141, "Cases on wills may guide us to general rules of construction; but, unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in

---

[6] In that case the will provided: "I give to my wife, Elizabeth Goodwin, all my personal estate . . . to and for her own use and benefit and disposal, absolutely; the remainder of the said estate, after her decease, to be for the use of the said Jesse Goodwin." It was held that the gift over indicated an intent to restrict the previous estate and that, as to certain slaves, Elizabeth Goodwin had but a life interest.

the construction of wills." The slightest variations in language or in attending circumstancse may lead a court to wholly different conclusions with regard to the testator's intent, and therefore to wholly different results. For that reason the conflict which appears to exist among the cases, and which is inherent in the problem, is in fact no more than an apparent one. If the intention of the testator is to be given effect, as it must be, courts must be permitted, considering each case separately, to hold ineffective words of restriction and to enforce an absolute estate, where such an estate was intended, or, conversely, to disregard words of absolute gift and to declare the estate created to be a limited estate where a clear intention to that effect appears.

Decree reversed and record remitted for further proceedings in accordance with this opinion, costs to be paid out of the estate in the hands of The York National Bank & Trust Company as executor.