## Phillips Estate

Before Klein, P. J., Bolger, Hunter, Saylor and Shoyer, JJ.

*Francis X. McClanaghan,* for exceptant.
*Frederick C. N. Littleton,* contra.

SHOYER, J., January 23, 1953.—The single issue is whether testatrix gave her husband merely a life estate in her realty or, in addition, a power to consume.

The will, composed of but one sentence, and written by testatrix in her own hand while in the hospital on the day of her death, is as follows:

"I Mary Phillips everything left to My Husband nickolas Phillips  As most of the things are in my name and after he is gone I want the rest of my estate if there is any I want to be left to My daughter to be hers".

Both sides agree, and we think rightly, that under this will the husband, Nickolas, takes less than an absolute fee simple estate.

Testatrix left a gross estate of $4,833.20.

The personalty has been consumed in payment of debts, administration expenses and family exemption, leaving only the homestead for distribution.

The auditing judge has likened the above language to that in Byrne's Estate, 320 Pa. 513 (1935), where the court found a power to consume in the life tenant with a valid remainder over to testatrix's niece. Because the present estate for distribution consists solely of real estate, however, Taylor v. Bell, 158 Pa. 651 (1893), was ruled to be controlling, and the auditing judge held that the life estate in Nickolas did not include the power to consume.

While Taylor v. Bell has never been expressly overruled by our Supreme Court, review of many later cases convinces us that the doctrine of that case and Fox's Appeal, 99 Pa. 382 (1882), Follweiler's Appeal, 102 Pa. 581 (1883), and Cox v. Sims, 125 Pa. 522 (1889), which it followed, has long been ignored in favor of a construction which more accurately carries out the wishes of testator.

In both Kennedy v. Pittsburg & Lake Erie Railroad Company, 216 Pa. 575 (1907), and Allen v. Hirlinger, 219 Pa. 56, 60 (1907), testator had given his widow an estate for life in all his property, but with an express power to consume, and with gift over to designated persons of the unconsumed portions. Both cases had been brought to determine the marketability of real estate and in each instance our Supreme Court held that the widow could convey a good title.

The Allen case was appealed first to the Superior Court which, relying upon Follweiler's Appeal, supra, and Cox v. Sims, supra, had held that the power of consumption must relate only to personalty because

an implied power to sell real estate could not be inferred merely from the use of language applicable to the personalty alone.

Our Supreme Court distinguished the Follweiler and Cox decisions, reversed the Superior Court, and held that the widow could convey a good title, saying:

"When the wife dies 'whatever may then remain of the estate, real, personal or mixed, I desire that the same remaining portion, if any, be given to my daughter.' No distinction is made again between the real and the personal estate, and an equal power to consume is implied in the expressed doubt 'if any' as to there being any unconsumed residue of either."

In Keown's Estate, 238 Pa. 343 (1913), a testamentary gift of all testator's property with an express "power to sell transfer and make title," with a gift over of "the property remaining" set forth in the next paragraph, was held to bestow upon the widow a life estate with power to consume the realty for maintenance only.

In Fassitt v. Seip, 240 Pa. 406, 411 (1913), testator gave his wife "all . . . . of My Estate, Real, personal and mixed . . . . to have Use, and enjoy the Same, in like manner as I myself Could do if living." In the next clause testator provided, "Whatever of my [his] Said estate, that may remain Unexpended after the decease of My [his] wife . ." should be divided among his children.

The widow conveyed away three properties which were promptly reconveyed to her by the grantees and all "remained intact at the time of her death, and in the same condition in which she had received them from the testator."

In an action of ejectment between her devisees and the remaindermen in testator's will, the court pointed out that under the Act of April 8, 1833, P. L. 249,

words of inheritance or perpetuity were unnecessary to pass a fee, but here there was a devise over to specifically designated remaindermen who were entitled to the "unexpended" balance which the wife might have consumed in her lifetime but did not.

"He intended that his wife should have every use and enjoyment of his residuary estate that he himself had while living. If necessary for her comfort and maintenance she could have consumed and expended all of it, and for these purposes could have conveyed a fee simple title to a bona fide purchaser. But this she did not do. . . . Not having consumed the residuary estate of her husband in her lifetime the wife could not dispose of it by will."

Hege v. Ickes, 267 Pa. 57, 60 (1920), marks the first real departure of our Supreme Court from the doctrine of Taylor v. Bell, although that decision had also been urged on the appellate court in both the Kennedy and Keown cases as well. Testator's devise of his real and personal estate to his wife lacked any express power of sale or consumption, as existed in the above cases, but was merely "to have and to hold for her natural life and at her death, should she have any of my estate left, I would will that my adopted daughter, Mabel Kieffer Hege, should have the sum of one thousand dollars, and should there be any balance of my estate it should descend according to the laws of the State of Pennsylvania."

At the time of his death testator owned real estate of approximately $10,000 and also personalty which was sold for payment of debts. The wife's right to sell the realty was upheld in a case stated to determine the marketability of her title.

The court said:

"The words quoted ['any of my estate left'] indicate testator had in mind the thought that his wife might consume the entire estate before her death and pos-

sibly no part would remain to pay the legacy and for distribution among the heirs. If power to consume a part or all of the estate was not intended, why should testator make provision for a conditional gift over in case there 'should' be 'any of my estate left' at the wife's death? Had he intended a gift for life only no necessity existed for the use of language indicating a doubt as to whether an unused portion would be left, inasmuch as a doubt as to the existence of a balance could be determined at the time of his death, and whatever realty testator owned at that time would necessarily be in existence at the death of his wife, if she were without right to use any part of the corpus. The power to consume, though not formally expressed, must therefore be implied to carry out testator's intention:" (citing cases).

It is to be noted that while the will failed to specify that the unexpended "balance" might consist of real estate as well as personalty, the court without hesitation held the implied power of consumption to apply to realty without making any distinction between the two forms of property.

The headnote of the Hege case, reporting that the wife took an absolute fee simple estate, was corrected by our Supreme Court in Edwards et al. v. Newland, 271 Pa. 1, 5 (1921), where the court preferred to follow its recent ruling rather than its earlier decision of Taylor v. Bell, which was urged upon it by counsel. Again there was no express power of consumption or sale of real estate, but the power was implied from the gift over which the court held applicable to all kinds of property.

The Edwards will provided:

"I hereby bequeath to my beloved wife, Alice Edwards, all my estate, real, personal and mixed, of whatsoever kind or wheresoever situate, and, upon the death of my wife, the residue thereof shall be divided

equally between our two children, Viers D. and Mary Winona, or the survivor of either."

The Supreme Court, after pointing out that since the Act of 1833 words of inheritance in a devise are not essential to pass a fee, said:

" . . . considering the first part of the provision before us, which, standing alone, gives the wife her husband's whole estate, the latter part, disposing of the residue left at her death, certainly shows an intention to grant her power to consume all or any part of the property devised,—'real, personal and mixed' (Hege v. Ickes, 267 Pa. 57; Houser v. Houser, 268 Pa. 401, 403), and, when found, such power includes the right to convey real estate, passing a good title: Hege v. Ickes, supra, 59, and cases there cited."

In Fairman's Estate, 287 Pa. 334, 336 (1926), testatrix gave to her husband all her "property, personal, real and mixed, to him and his assigns, forever. 2nd. At his death if any is left I direct it to go to my sister. . . . " After pointing out that the first clause of the will was sufficient to vest in the husband a fee simple estate, the word "heirs" not being necessary since the Act of 1833, the Supreme Court said:

"But a will must be construed as a whole and if reasonably possible every word must be given effect (Ludwick's Est., 269 Pa. 365), and if by subsequent provisions it appears with reasonable clearness that, notwithstanding the fee simple gift implied from the language first employed, only a life estate was intended, such intention will control. See Long's Est., 270 Pa. 480; Fassitt v. Seip, 240 Pa. 406; Good v. Fichthorn, 144 Pa. 287. It is not a question of depriving an estate of its legal incidents but of what estate the will in fact gave the first taker. Doubtless Mr. Fairman might have disposed of the estate in his lifetime, but he did not, and the language in her will, 'at his death if any is left I direct it to go to my sister,'

etc., is mandatory and not merely precatory. It is clearly testamentary language."

It is to be noted that in none of the three cases last cited above was there an express power to sell real estate. The court, however, implied the power from the language of the devise over, to wit, "should she have any of my estate left," "the residue thereof," and "at his death if any is left."

Furthermore, the court in each instance held that the power to consume applied to the real estate, refusing to follow the doctrine of Taylor v. Bell that so long as the power was intelligible in its relation to the personal property, it should be so restricted in its application. See Zanich v. Okum et al., 109 Pa. Superior Ct. 200, 204 (1933).

The Supreme Court in Fox's Appeal (p. 386) paid lip service to the Act of 1833, but the words of Mr. Justice Strong in Cowles v. Cowles, 53 Pa. 175, 176 (1866), that "the heir is not to be disinherited by anything less than a clearly apparent intention to pass the estate in another line of succession" were ringing more loudly in their ears.

Follweiler's Appeal and Cox v. Sims followed suit, refusing to recognize a fee in the first taker.

In 1930 the Supreme Court in Chestnut et al. v. Chestnut et al., 300 Pa. 146, 151, speaking through Mr. Justice Simpson, observed that testators were still ignorant of the Act of 1833 (reënacted in section 12 of the Wills Act of June 7, 1917, P. L. 403, 407, 20 PS §224) and its effect so that "where, in the grant to the first taker, a testator uses apt language to pass a fee," the court will more readily construe a fee than where the language used does not so clearly express that purpose.

Section 14 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.14(3) has replaced section 12 of the Act of 1917, 20 PS §224, which in turn replaced the

Act of 1833. Probably testators are still unfamiliar with these statutory enactments, but certainly they have come to realize that devises of real estate will be given effect despite the absence of words of inheritance or other legal verbiage now declared by the legislature to be surplusage.

Furthermore, it is now well established that the power in the life tenant to sell real estate, with the right to consume the proceeds, does not enlarge his estate to a fee (Walker's Estate, 277 Pa. 444, 449 (1923), and the grant of the power to consume is not repugnant to the creation of a life estate: Fidelity Title and Trust Company v. Nibozin et al., 88 Pa. Superior Ct. 113, 116 (1926).

In the present will, testatrix has used the word "left" to express her testamentary intent. She has employed it twice, and apparently to her it was the most adequate and effective way of expressing an inheritance. Lexicographers agree with her that testamentary transfer is one of the primary uses of the verb "leave". An experienced scrivener would have used the present tense rather than the past tense, but then, too, he would probably have used the traditional verbs "give, devise and bequeath."

Testatrix obviously had in mind two beneficiaries: (1) Her husband, and (2) her daughter, her only child. She placed no strings on her bounty to her spouse, but only if there was a surplus, was her daughter to take. Use of the euphemism "after he is gone" points unmistakably to the affection which she had for him.

The language here used is indistinguishable from that in Fairman's Estate, and we believe it should receive a like construction. While testatrix's dominant intention was to give Nickolas less than a fee, nevertheless she did give him a power to consume realty as well as personalty.

The first exception to the finding of the auditing judge that Nickolas Phillips has a life estate in the real property owned by decedent with remainder over to Sophia Watts is sustained, and the finding is modified by our ruling that in addition to his life estate Nickolas Phillips also has a power to consume said real estate.

The exception set forth in the second paragraph, which is unnumbered, is likewise sustained, and the award of the auditing judge is modified in that premises 1630 Swain Street, Philadelphia, valued at $2,400, is awarded to Nickolas Phillips for life, with a power to consume, and the remainder, if any, upon the death of Nickolas, will go to Sophia Watts.

The third exception is sustained insofar as it complains of the action of the auditing judge in failing to award premises 1630 Swain Street, Philadelphia, to Nickolas Phillips for life with power to consume, and in all other respects it is dismissed.