## Skelly Estate v. Carlisle Hospital

Before Shughart, *P.J.,* and Sheely, *J.*

*John H. Broujos*, for petitioner.

*Thomas J. Williams* and *James D. Flower*, for charitable remaindermen.

SHEELY, *J.*, August 4, 1978—This case is one requiring the court to interpret the wording of a will. The facts can be briefly stated:

Petitioner is Dessie E. Skelly, an elderly single woman, presently residing at the Swaim Retirement Center, Newville, Pa. Respondents, Carlisle Hospital, First Lutheran Church, Visiting Nurses' Fund, and Tressler Home, are remaindermen designated in the will here in question.

On April 18, 1955, Anna B. Skelly, petitioner's sister, executed a holographic will which provides in toto:

> "Carlisle, Penna.
> April 18—1955

"After all bills such as funeral expenses or any other bills I owe are paid. I bequeath remainder to my Sister if she survives me in death. as long as she lives. Which she shall use if she needs it one half of property at 28 East Pomfret St. and all other personal possessions at her death it is to be divided in 4 equar [sic] parts.

No. 1.  Carlisle hospital

No. 2.  First Lutheran Church Carlisle

No. 3.  Visiting nurse fund Carlisle hospital

No. 4.  Tresslers Home, Loysville

> Signed
> Anna Skelly

Witnessed

5/26/'55 Walter F. Wilson"

On April 25, 1960, Anna Skelly died. At her death, Anna owned real property as tenants in common

with Dessie, located at 28 East Pomfret Street, Carlisle, and valued at $23,000, and personal property jointly as tenant in common with Dessie, valued at $4,988.25 as of March 8, 1978. Subsequently, a public auction of the personalty owned by the sisters as tenants in common was held on April 8, 1978, with the proceeds totalling $3,806.82. On August 10, 1977, petitioner entered the Swaim Retirement Center with no intention of returning to the East Pomfret Street residence. Petitioner allegedly fears harm and deterioration will befall the real estate if it continues vacant. Therefore, petitioner requests this court, pursuant to the Act of June 18, 1923, P.L. 840, 12 P.S. §831 et seq., and pursuant to the Act of June 30, 1972, P.L. 508, as amended by the Act of December 10, 1974, P.L. 867, as amended by the Act of July 9, 1976, P.L. 551, 20 Pa.C.S.A. §§711, 712, to enter a declaratory judgment determining that under the terms of the will she be declared to have a power to consume the proceeds of the liquidation of both the real and personal property.[1]

The propriety of a petition for declaratory judgment is dependent upon the issues presented to the court. If a dispute exists between the parties wherein all the facts within the petition are admitted and the only question for resolution is purely a legal one, such issue is properly before the court upon petition for declaratory judgment. See Sheldrake Estate, 416 Pa. 551, 207 A. 2d 802 (1965); Kirk Estate, 38 Northumb. L.J. 77, 38 D. & C. 2d

---

1. Petitioner, on March 2, 1978, entered into a written agreement to sell the real estate here in question. Settlement is to be made within 15 days of approval of the sale by the Orphans' Court.

532 (1965); In re duPont's Estate, 13 Chester 302 (1966).

In the instant case, we are faced with the task of resolving what the testatrix intended by the words used in her will. Did she intend her sister to take what passed under the will in fee simple, did she intend simply a life estate, or did she intend to devise a life estate with the power to consume?[2] As was stated in Houston Estate, 414 Pa. 579, 586, 201 A. 2d 592, 595 (1964):

". . . It is now hornbook law—1. that the testator's intent is the polestar and must prevail; and

---

2. "The difficulties which pervade this whole subject, vexing as it is and always has been to courts and lawyers, recall a remark of Sir Edward Coke's: 'Wills and the construction of them do more perplex a man than any other learning, and to make a certain construction of them, this excedit jurisprudentium artem.' The effort always is to determine the intention of the testator, and, unless public policy forbids it, to enforce that intention, so that in death his property may be faithfully disposed of according to his will. Courts have this duty in the last analysis, and cases, even in the same jurisdiction, which seem to be, on the one hand, completely parallel, or, on the other hand, in irreconcilable conflict, are really not so because in each instance the result reached is grounded upon the court's decision, in view of all the circumstances, as to what the testator intended. As was said by Chief Justice Marshal in Smith v. Bell, 31 U.S. 68 [1832], at page 80, quoting from 3 Wils. 141, 'Cases on wills may guide us to general rules of construction; but, unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.' The slightest variations in language or in attending circumstances may lead a court to wholly different conclusions with regard to the testator's intent, and therefore to wholly different results." Byrne's Estate, 320 Pa. 513, 522-23, 181 Atl. 500, 505 (1935).

2. that his intent must be gathered from a consideration of a. all the language contained in the four corners of his will and b. his scheme of distribution and c. the circumstances surrounding him at the time he made his will and d. the existing facts; and 3. that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain." (Citations omitted.) Further, precedents are of relatively little value in the construction of wills, although some aid may be gained by comparison and analysis of similar cases:[3] LaRosa v. McVicker, 185 Pa. Superior Ct. 95, 137 A. 2d 861 (1958).

Other rules of will construction are also helpful in the determination of the testator's intent. "'. . . It is not what the Court thinks [the testator] might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words.'" Moltrup Estate, 424 Pa. 161, 225 A. 2d 676, 678 (1967), quoting from Hoover Estate, 417 Pa. 263, 266-67, 207 A. 2d 840, 842 (1965). Additionally, "in a layman's will the language must be interpreted

---

3. In Dowd Estate, 176 Pa. Superior Ct. 203, 107 A. 2d 387 (1954), the court opined: "We are in accord with the statement in Jackson's Estate, . . . [337 Pa. 561, 12 A. 2d 338 (1940)] that precedents are of little value in the construction of wills. 'An exhaustive review of the decisions leads us to the frank conclusion that will cases may be found to support almost any given proposition of construction; but that, in the final analysis, each will stands on its own feet and is construed according to the court's view of the testator's actual meaning.'" Id. at 205-206, 107 A. 2d at 388.

without reference to technical rules of construction." Dowd Estate, 176 Pa. Superior Ct. 203, 206, 107 A. 2d 387, 388 (1954). See also Rarick Estate, 59 Sch___ 1, 13 Fiduc. Rep. 271 (1963). Further, the rul 1at where two inconsistent clauses are present in a will the later provision must be taken to represent the last expression of the testator's intention, is only to be invoked where "there is an utter repugnancy." Fisher Estate, 355 Pa. 105, 106, 49 A. 2d 376, 377 (1946). See also, Anderson's Estate, 33 York 24, 67 Pitts. L.J. 232, 28 Dist. 327 (1919).

In the case at bar, the operative section of Anna Skelly's will states: "I bequeath remainder to my Sister if she survives me in death. *as long as she lives.* Which she shall *use if she needs it* one half of property at 28 East Pomfret St. and all other personal possessions at her death it is to be divided in 4 equar [sic] parts." (Emphasis added.) We have diligently reviewed all the cases submitted by counsel for both petitioner and respondents. Respondents rely mainly on Fowler's Estate, 281 Pa. 459, 126 Atl. 817 (1924), and France's Estate, 75 Pa. 220 (1874).

In Fowler's Estate, supra, the testator bequeathed to his wife "to have and to hcld, and to use during her life, and at her death all money, stocks, bonds, mortgages, notes and all property of every kind to go to such charitable institutions as she may designate." Id. at 460, 126 Atl. at 817. The court held:

"'The interest given to the widow . . . is a life estate. . . . The power to consume is not implied from the right to "use" the corpus, because it is "all" given over to charitable uses to be appointed by the tenant for life. This seems to . . . emphasize

the intention of testator that when he authorized his wife to use his property he did not mean by that that she could consume it.'" (Ellipsis in original.)

Clearly, the above is not decisive of the will we are asked to construe. In the case at bar the testatrix included with the right to use the phrase "if she needs it," and the word "all" was not used to describe that taken by the remaindermen.

The language of the will in France's Estate, 75 Pa. 220, 223 (1874), provided: "'Item, I give and bequeath to my beloved wife Jane, one-third of all my personal property, and one-third part of all the income, rents, and use of my real estate. Item. I do give and bequeath unto my son, William France, all the residue and remainder of my estate, real and personal.'"

The court held that "[b]y holding then that the wife took a life estate only, as we do, it gives effect to the latter clause, and does no violence to any part of the will." Id. at 225. This case, too, is distinguishable from the one before us. In France's Estate, supra, the contest arose *after* the widow's death, and was between the son, William France, and the second husband of the testator's widow. The issue was only whether the widow had taken a life estate or an estate in fee simple under the will. In holding that the widow had only taken a life estate, the court did not discuss whether the widow, had she been living, would have had the power to consume the estate, both real and personal. Based upon other decisions, however, we feel it is probable that the power to consume was devised. See Smith v. Bell, 31 U.S. 68 (1832); Edwards et al. v. Newland, 271 Pa. 1, 113 Atl. 742 (1921); Keown's Estate, 238 Pa. 343, 86 Atl. 270 (1913); Allen v. Hirlinger, 219 Pa. 56, 67 Atl. 907 (1907); Boyle v.

Boyle, 152 Pa. 108, 25 Atl. 494 (1893); Maykut Estate, 75 Montg. 234, 9 Fiduc. Rep. 193, 18 D. & C. 2d 258 (1959).[4]

A case that appears more specifically on point than those cited by either counsel is Kennedy v. Pittsburg & Lake Erie R.R. Co., 216 Pa. 575, 65 Atl. 110 (1907). There, the testator gave to his widow "all my . . . estate both real and personal . . . during her natural life with privilege to use part of the principal if she should need it . . . and at the decease of my wife I will and direct my executor to sell . . . all my real and personal estate not used by my wife in her lifetime, and divide the proceeds . . ." Id. at 575-576, 65 Atl. at 1102. The court held:

"This language does not admit of the least doubt of what the testator in fact meant, and his actual intent is his legal intent. He gave the power to use the principal in words in themselves and in their context equally applicable to both the real and the personal estate, and then he clinched that meaning by the direction to the executor at her death to sell 'all my real and personal estate not used by my wife in her lifetime.' He thus twice classed the real and personal estate together, made no distinction between them in his provision for his wife's power

---

4. Further, we might mention that the line of cases relied upon by respondents, including Taylor v. Bell, 158 Pa. 651, 28 Atl. 208 (1893); Cox v. Sims, 125 Pa. 522, 17 Atl. 465 (1889); Follweiler's Appeal, 102 Pa. 581 (1883); and Fox's Appeal, 99 Pa. 382 (1882), and requiring that the power to consume realty be explicitly stated, 'has long been ignored in favor of a construction that more accurately carried out the wishes of the testator." Phillips Estate, 82 D. & C 69, 70 (Phila. 1953) (see the line of cases cited therein).

over them, and intended that no such distinction should be made." Id. at 576, 65 Atl. at 1102-1103.

The court held that the testator's widow had a right to consume the principal of both the real and personal estate, and consequently had the right to convey the real estate.

While the Kennedy case is not identical to the case presently before us, it affords us some guidance in resolving the meaning of Anna Skelly's will. Granted, the will in this case does not include similar wording to "all my real and personal estate not used by my wife in her lifetime," (emphasis supplied), but we are certain that the words "Which she shall use if she needs it" are sufficient to show the intention of the testatrix to devise a power to consume.

Respondents have attempted to define "use" for us, citing Philadelphia v. Merchant & Evans Co., 296 Pa. 126, 145 Atl. 706 (1929), wherein it was stated: "In general 'use' has been defined as 'the right to enjoy, hold or occupy and have the fruits thereof.' If the thing used is in the form of real estate, the 'use' includes the occupancy or cultivation, or the rent which can be obtained therefrom." (Citations omitted.) Certainly, we agree that "use" *may not* entitle the one given the use to convey that which he is entitled to use. See Fowler's Estate, supra. Nevertheless, under proper circumstances, conveyance may be an appropriate use. See, e.g., Kennedy v. Pittsburg & Lake Erie R.R. Co., supra. See also, Pearson v. State Social Welfare Bd., 5 Cal. Rptr. 553, 353 P. 2d 33 (1960); Smith et al. v. Smith et al., 359 Mo. 44, 220 S.W. 2d 10 (1949); In re Lane's Will, 201 Misc. 1003, 106 N.Y.S. 2d 987 (1951). We feel that these "proper circumstances" are present in the case at bar.

In considering the entire will and the attendant circumstances involved, the court should include the condition of the family, the natural objects of the testator's bounty, and the amount and character of the property: Woodward Estate, 407 Pa. 638, 182 A. 2d 732 (1962); Newlin Estate, 367 Pa. 527, 80 A. 2d 819 (1951). Anna and Dessie Skelly were sisters who lived together, by themselves, in property which they owned as tenants in common since August 16, 1940. As tenants in common, it would have been totally unnecessary and superfluous for Anna to specfically devise the "use" of the real estate they both were already in possession of and seized of.[5] To us, her intention had to have been to bequeath to Dessie Skelly the power to sell the property if needed. Considering the obvious closeness of the two sisters, the "if she needs it" language certainly afforded Dessie the power to consume the property. The remainders here were contingent upon there being part of the estate unused at Dessie's death. "The power to consume, though not formally expressed, must therefore be implied to carry out [the testatrix's] intention." Hege v. Ickes, 267 Pa. 57, 60, 110 Atl. 238, 238 (1920); Phillips Estate, 82 D. & C. 69, 72 (Phila. 1953). Further, the power to consume real estate necessarily includes the power to convey: Allen v. Hir-

---

5. Black's Law Dictionary, Revised Fourth Edition, defines "Tenancy in Common" thus: "Where property is held by several and distinct titles by unity of possession, neither knowing his own severally, and therefore they all occupy promiscuously. (Citation omitted.) The holding of an estate in land by different persons under different titles, but there must be unity of possession and each must have right to occupy the whole in common with his cotenants." (Citation omitted.)

.

linger, supra; Kennedy v. Pittsburg & Lake Erie R.R. Co., supra; Zanich v. Okum, et al., 109 Pa. Superior Ct. 200, 167 Atl. 463 (1933).

Neither does the absence of words indicative of the remainder such as "should any part of my estate remain;" Byrne's Estate, 320 Pa. 513, 514, 181 Atl. 500, 501 (1933): "should there be any balance of my estate;" Hege v. Ickes, supra; "the rest of my estate if there is any;" Phillips Estate, supra; "everything left," Rarick Estate, supra; "whatever of my said estate, that may remain unexpended," Fassitt v. Seip, 240 Pa. 406, 409, 87 Atl. 957, 958 (1913); "the residue," Edwards et al. v. Newland, supra, and Maykut Estate, supra; "any remainder," Boyle v. Boyle, supra; "the property remaining of my estate," Keown's Estate, supra; "whatever may then remain," Allen v. Hirlinger, supra; "so much thereof as may then remain unexpended," Zanich v. Okum et al., supra; "should there be any monies, or real estate left," Pennsylvania Dept. of Public Assistance v. Lloyd, 23 Northumb. 102, 108 (1951); "the balance," Anderson's Estate, supra; and "all my real and personal estate not used by my wife in her lifetime," Kennedy v. Pittsburg & Lake Erie R.R. Co., supra, affect the result we herein reach. While these words may strengthen the argument for a power of consumption, we are not of the opinion that such wording is essential in the will before us. Indeed, we are convinced by the phrase "which she shall use if she needs it" and the surrounding circumstances that the testatrix clearly intended to afford her sister a life estate coupled with the power of consumption. The language that "it is to be divided in 4 equar [sic] parts" only refers to that not used by Dessie Skelly.

In Allen v. Hirlinger, 219 Pa. 56, 57, 58, 57 Atl.

907, 907, 908 (1907), Chief Justice Mitchell aptly stated:

"The class of wills to which this belongs present inherent difficulties in construction by their indication of an intent not accurately defined in the testator's own mind, if not of double and to some extent conflicting intents. The testator gives to the first taker the estate, or, what is practically the same thing, the power to consume the whole and yet manifests his expectation at least if not his intention, that it shall not all be consumed. These two purposes, manifestly present in his mind, but not accurately defined, and their possible conflict perhaps not perceived at all, at once raise the question, has the will limited the estate given, or has it attempted to deprive the estate given of some of its essential legal properties? . . . As the first donee is usually the principal object of the testator's bounty the presumption in case of conflict is always in his favor. Hence there is a strong trend, notably in the later cases, to construe the first gift as a fee, and the subsequent words, which appear to be repugnant, as either merely precatory, as in Good v. Fichthorn, 144 Pa. 287 and Boyle v. Boyle, 152 Pa. 108, or as expressive of a particular and subordinate intent which must fail as an attempt to deprive the estate given of its legal attributes, as in Jauretche v. Proctor, 48 Pa. 466; Levy's Estate, 152 Pa. 174; Evans v. Smith, 166 Pa. 625; Gilchrist v. Empfield, 194 Pa. 397 and Huber v. Hamilton, 211 Pa. 289."[6]

6. This presumption is compatable with that stated in Fisher Estate, supra, that the last expression of the testator's intent should be followed only where "there is an utter repugnance" within two conflicting portions of a will.

Therefore, we hold that Anna Skelly intended to devise to her sister, Dessie E Skelly, a life estate with power to consume both the real and personal property. In this way, we comport fully with the intentions of the testatrix.

"Furthermore, it is now well established that the power in the life tenant to sell real estate, with the right to consume the proceeds, does not enlarge his estate to a fee (Walker's Estate, 277 Pa. 444, 449 (1923), and the grant of the power to consume is not repugnant to the creation of a life estate: Fidelity Title and Trust Company v. Nibozin et al., 88 Pa. Superior Ct. 113, 116 (1926)." Phillip's Estate, 82 D. & C. 69, 76 (Phila. 1953). See also Folchman Estate, 22 Chester 233, 65 D. & C. 2d 88 (1974).

## ORDER

And now, August 4, 1978, in accordance with the opinion filed this day, it is hereby ordered and directed that declaratory judgment be entered in favor of petitioner, Dessie F. Skelly, giving her the power to consume, until her death, that property, both real and personal, bequeathed to her under the will of her sister, Anna B. Skelly.